First, we'd like to welcome the Honorable George Stee from the United States District Court for the Eastern District of Michigan. We're delighted to have you with us today. Thank you. And secondly, we would request that each appellant indicate how much time he or she would like for rebuttal. Would the clerk call the first case, please? Case No. 14-5155, John Ohnemus v. Travis Thompson. Oral argument not to exceed 15 minutes per side. Mr. Hectus for the appellant. Your Honor, we'd like to reserve three minutes for rebuttal. Fine. May it please the Court? Mr. Jacobs. This case is about a situation or a state of facts that Judge Caldwell characterized as a disturbing abuse of power, assuming the facts in the complaint as true, which she was obligated to do. In response to the defendant's motion to dismiss, she determined that the sole question was whether the criminal proceeding was terminated in favor of Mr. Ohnemus. And based upon an agreement to make restitution, decided that question adversely to Mr. Ohnemus. This case dates back to December of 2010, when Mr. Thompson, who's a deputy sheriff with the Pulaski County, Kentucky Sheriff's Department, contacted Airfoil Aerial Systems, which is an Illinois corporation, regarding the purchase of a drone helicopter with a thermal imaging camera. There were some negotiations that occurred in December, and there was finally a deal struck by the end of December. In February of 2011, mid-February, the drone was shipped to the Pulaski County Sheriff's Department. At that time, it did not have the thermal imaging unit that had been ordered. It's referred to as a FLIR camera, forward-looking infrared camera. I think that we are generally familiar with the facts. The concern that I have for your side is the dismissal in the Kentucky State Court, where there was a requirement that your client pay restitution to the sheriff. Did your client agree to this order? Your Honor, the record reflects that at least his attorney agreed to the order. At the time the order was entered, my client wasn't in court. He was arraigned, and several months later— You're not making an argument that your client's not bound by his— I have not argued that. But in direct response to Judge Moore's question, the record doesn't reflect whether he actually agreed to it or whether his attorney acted as his agent. But we're not contesting that there was some consideration given to the restitution. We would argue that notwithstanding Judge Caldwell's determination that that rendered this agreement, if you will, to not have resulted in a termination in his favor, that there was clearly an underlying contractual dispute, and that the restitution agreement actually resolved that contractual dispute. And in the context of this case, and under the Rummery decision, these cases have to be analyzed on a case-by-case basis. And on the appellate decisions of the Kentucky courts, I would argue that the same thing, since they've adopted the Coughlin v. Coots analysis. So you're suggesting then that in this order that was signed by the Pulaski District Court judge, that the payment requirement that your client pay restitution is a civil restitution as opposed to a criminal penalty? That's exactly what I'm saying. And in fact, Judge Caldwell, I would argue, inferentially recognized that at page four of her decision, when she indicated that negotiations were going on with regard to the purchase contract between December and September of 2011, over 10 months, that the deputy sheriff stopped negotiating out of what she characterized as either frustration over the delay and or buyer's remorse. There was no suggestion there that a crime had been committed. Then what happened is in October, the month following the deputy's refusal to continue negotiations, he takes a warrant out for theft for failure to make required disposition. And what I would submit is that, and particularly if we've been allowed some discovery, is that there was a recognition by airfoil systems that the correct camera wasn't delivered with the GSR, the drone. And the reason it wasn't delivered is because the company that was making that camera apparently was no longer making that particular camera and there was an attempt made, which is documented, to get a substitute infrared imaging camera. There clearly in this case, not only was there no probable cause, no stipulation of probable cause and no covenant not to sue, unlike the cases cited by the appellee, there simply was no crime committed in this case. And the restitution agreement had to do with the underlying contractual dispute with respect to the amount of money that was paid for the camera that was not delivered. Although, as I said, there was numerous emails, telephone conversations, and correspondence back and forth with respect to that. Does the, and please help me out here, I'm not really understanding how this works in Kentucky, but does the particular court here, the 28th Judicial Circuit, Pulaski District Court, have both civil and criminal jurisdiction so it could order a civil payment? It wouldn't have jurisdiction over the amount in controversy in this case. But it certainly would have jurisdiction to make orders coincident with its orders dismissing this case. I'm not contesting whether the court had jurisdiction to make that order. But with respect to Judge Caldwell's determination that because this was a compromise, that under Kentucky law, it did not constitute a termination in favor of the accused. The cases that speak to that, including the Broadus case and other cases that Judge Caldwell relied upon, make that determination because the compromises that were at issue in this case, or those cases, such as stipulations of probable cause or covenants not to sue, indicated the lack of innocence of the accused. Whereas, given the underlying facts in this case, that there really isn't any suggestion, and there's nothing that can be pointed to and nothing has been pointed to by Deputy Thompson, that Mr. Animas was in fact guilty of the crime of theft by failure to make required disposition. And as a matter of fact, as I pointed out in my brief, the contract wasn't even with Mr. Animas. It was with Airfoil Aerial Systems Incorporated, and that's who was paid, not Mr. Animas. The test is whether the proceedings were terminated in his favor. And while there's nothing to indicate that he was guilty, as you say, there's also nothing to indicate that he was exonerated by virtue of the order. So that question of guilt is left open. Would you agree with that? The question of guilt was left open by virtue of the entry of this order. Well, I think to the extent that it might have been left open, Your Honor, that's exactly why there should have been some discovery permitted and why the court should not have dismissed this on a motion to dismiss. We never had an opportunity to elaborate on any of the contentions that we made. How would you, if you had discovery, be able to establish that the proceedings, which were terminated by this order, which was contingent on the payment of restitution, were terminated in his favor? How would you establish that? One of the things we would have been able to do is to depose the prosecutor as to the circumstances of this agreement. We would have been able to depose the criminal defense counsel, who is not counsel in a civil case. We would have been able to depose Deputy Thompson as to why he took this warrant out after 10 months of negotiations, even failed negotiations, and what evidence he actually had other than the conclusory allegations that were contained in his affidavit for the arrest warrant, some of which I believe were just absolutely untrue. For example, that Mr. Onimus received the payment. Mr. Onimus did not receive the payment. Then why did he, Mr. Onimus, agree to pay the $22,000 if it was Airfoil who owed it? I think for the same reasons that Justice O'Connor in her concurrence in the Town of Newton v. Rummery case suggested that many innocent defendants may agree to some disposition of criminal charges having to do with the expense of litigation, the delay, the consternation, and things like that. But even given all these things, I mean, it's pretty clear under the Coughlin v. Coots case from this circuit, as well as the Kentucky case law cited to the court in Williams v. Klein, that even with this type of agreement, if you will, that we believe that the court had to make a determination as to whether the agreement was voluntarily made, whether the agreement was not the product of prosecutorial overreaching, and whether the agreement serves the public interest. And we would indicate, we would suggest that given the fact that she found that this was a disturbing abuse of power, that clearly this agreement violates the public interest by protecting a deputy who took out a warrant really based upon no finding of probable cause, almost in retaliation for the failure of these negotiations. We also believe... You believe the test should be the same, and I'm sorry to interrupt, but you believe the test should be the same in this instance as in the release and dismiss cases? Oh, absolutely, I believe that. Don't we have ample indication that this was a voluntary dismissal of the action and voluntary payment? Your client was not in custody at the time. Under the Town of Newton case, under Coughlin v. Coots and under Williams v. Klein, the proponent of the release agreement, and I would say that this is not dissimilar in any kind of fashion from a more formal agreement. If anything, it probably requires more attention to the detail and the circumstances than an actual release agreement. But in the three cases that I just cited to the court, the court required that the proponent of the release agreement has to prove these things, these three elements, that the agreement was voluntarily made, that it was not the product of overreaching, and that it serves the public interest. Those items weren't even touched on, either by Deputy Thompson or by the court. And at the very least, I think this case would need to be remanded for a determination by Judge Caldwell of those three factors. I mean, that's what this court required in Coughlin v. Coots. Thank you very much. Good morning. May it please the court? Mr. Hectus and Mr. Hellringer, my name is Patsy Jacobs, here on behalf of the appellee, Mr. Thompson. In order to overturn Judge Caldwell's opinion, this court would have to ignore well-established and really crystal-clear Kentucky tort law. The broadest case in this case, which was issued in 1995, after the Romary case in 1987 at the United States Supreme Court, and after this court looked at Coots under the same type of Romary analysis in 1995, the Kentucky courts refused to adopt that and said, this is our tort system. The Romary case, the Coots case, involved federal law issues and a federal statute. This case and the broadest case involve Kentucky tort law, which is well-established, and we'd have to ignore that completely in order to have the order overturned. This case is here on diversity only, so it's state law claims, state law that applies. As your honors have noted, it is required that Mr. Animas prove each and every element of the tort, and the element he just simply cannot prove is that the underlying matter was terminated in his favor. The broadest case and then all the progeny of cases that come after that have adopted the restatement second that says you have to show that by circumstances that indicate his innocence, and a compromise leads to that question. showing his innocence, that it is dismissing the case with prejudice. Your honor, with prejudice upon the payment of the restitution, which is exactly the circumstance that is contemplated by the restatement in the Kentucky cases. It's a compromise. But the proponents are arguing that the restitution is a civil settlement as opposed to a criminal restitution. It's within the full framework of a criminal case, and as was noted, that court didn't even have the jurisdiction to make a civil settlement in this matter because the jurisdiction in Kentucky for district court is $4,000 or less for civil cases. Surely, Kentucky criminal statutes include restitution somewhere in that chapter. Oh, they do, as an alternate punishment to incarceration. Exactly, and that's what happened in this case. Does the criminal law of Kentucky require a conviction before a restitution can be ordered? Absolutely not. Could you give us the sections of Kentucky law on this? Judge, I don't think there is a section because their plea bar is up. For some reason, I thought that Kentucky law did require there be a conviction before restitution could be criminally ordered. I don't know either. I'm sorry. I know that it is routinely part of plea bargaining and compromise and ways to dispose of cases. And the restatement, which has been followed consistently in Kentucky, clearly contemplates this type of situation where a compromise was made. And Mr. Hectus argues that his client was, in fact, innocent and all these other things. Well, we don't know because that litigation was terminated upon the agreement. Just to clarify for Judge Moore, Mr. Animas did, in fact, agree to pay this. There's a statement in the record that he has signed that says, I agree that this money should be taken out of my bond in restitution for dismissal of the cases. That's as clear as we can get. So this is in the record that we have? Yes, Your Honor. Yes. And I'm looking at my notes, and the Kentucky revised statute that I came across was 532.350 defining restitution as any form of compensation paid by a convicted person to a victim, which suggests to me that you have to have a conviction in order to actually have restitution. And that's why I'm wondering if the word restitution in this order, because there is no conviction, is referring to a civil payment as opposed to a criminal payment. Your Honor, I don't know that any of the parties at that time contemplated whether or not that restitution was a term of art and that they're referring to a civil case or not. What we do know, whether it's, I don't know, refund, restitution, whatever they might have called it, it's still a compromise. And the cases that have looked at this, in Kentucky the broadest case and then some of those afterwards, really looked at even just a stipulation of probable cause was enough to make it not a termination in favor of the now plaintiff. And that's a pretty low standard. In this case, there was an agreement to pay, agreement to get rid of this criminal case for $22,000. And so that's a whole lot more. And Mr. Hectus also argues and would like to have discovery in this case, but 12b-6 is the mechanism by which we terminate litigation when it is impossible for him to prevail, when he simply did not state a claim upon which relief could be granted. And he didn't because it isn't there, because that element cannot be. The shortcoming in his case, if there is one, is a feature of the docket entry, right? And what could he discover that would change the record? Well, that's precisely my point. The record is clear. The docket entry is the public record in that it clearly reflects what happened. It's a compromise. It's a settlement. It is not indicative of his innocence. It may not be indicative of his guilt either. Well, looking at the document, how do we know that it is a compromise? It is a document, at least the page that I have from page ID 53. The Commonwealth of Kentucky is moving the court for an order. Maybe I'm not looking at the right thing. And then it's at the bottom, so it's signed by the Pulaski County attorney, and then at the bottom there's the word order. It is so ordered, and the signature of the judge. Maybe there's something else that I'm not seeing. Your Honor, it should be in your record, but there is attached to the next page of that is a statement, I, John Animas, approve deducting that amount from my bond to dismiss this case. It's filed in the record and it's signed by him. Does that have a little label at the bottom? That's an Exhibit B from the original. It was Docket Entry 7-2 in this matter. Great. Thank you. So the law is clear. I think Mr. Hectus's reliance on the Rummery case in Prodigy is also misplaced. Again, that was federal law applying a federal statutory right and a release-dismissal agreement. Well, federal constitutional rights. Yes, Your Honor, and this is clearly Kentucky tort law. You can't shift the burden that Mr. Animas has to prove each and every element of this tort case by referring to a federal statute and federal law. Additionally, the case that he decided, Williams v. Kline, in support of his position was actually depublished by the Kentucky Supreme Court, and so it's not authoritative in any way. It was a case from the Kentucky Court of Appeals and was depublished. Further, even if we were to assume that Rummery would apply, all it says is a case-by-case analysis. All they did was decline to adopt a per se rule that all release-dismissal agreements are invalid. A case-by-case analysis does not mean that you get the full complement of discovery. In this case, it was analyzed individually. The elements cannot be met, and so the order of dismissal was appropriate. Your Honor, since Mr. Hectus did not address the defamation claim, let me do that very quickly. I think also the court below Judge Caldwell properly dismissed that case because the only publications that were alleged in the complaint were in the court system, in the Pulaski Circuit Court records and to the newspaper, and those are without question absolutely privileged. Your Honor, I think this case is— Well, isn't there a certain amount of vagueness in the complaint about the republication in terms of what exactly happened? Your Honor, I think at paragraph 37 of the complaint, he says it was published both in the court record, in the Pulaski District Court, and to the news media. Those things are privileged. He's not alleged any other— The language is, was published to third persons, both in the public records of the District Court of Pulaski County as well as republication in the news media. So don't we need to know what republication means in Kentucky? Your Honor, republication in Kentucky is privileged under the Greenfield v. Courier Journal. Those things that are published from the court record into the newspaper are privileged communications. So you're defining republication as a transmittal of the court record to the news media? I think that's the only conclusion we can make from the complaint. Whether it's not well drafted or not, that it's—all he says is that it was in the court record and then republished. He didn't say an article. He didn't say there were statements about it. He says it was republished, the court record, and then republished into the newspaper. And those are privileged communications, absolutely privileged, regardless of the intent behind those. So my understanding of your response then is that republication means literally the same document is put in the news media. Your Honor, I don't want to say that they scan the document and put it there, but if they say, you know, arrests in Pulaski County or charges in Pulaski County and put that statement there, I believe that's what was alleged here, and I believe that's what is privileged and thus makes his claim fail on that on the pleadings. Your Honor, this is an appropriate case for dismissal on the pleadings. You look like you had a question. I'm sorry. I was thinking about the word republication. I mean, it does coincide with papers. Newspapers are published, but republication, I suppose in the broad sense of that word, could be someone going out on the courthouse steps and screaming out the news that this man, you know, agreed to whatever. Your Honor, I think if that had been the case, that would have been stated in detail. No, I realize that. I'm thinking about the meaning of the word. You know, it doesn't have to be. Judge Moore is trying to think, and so am I, about whether that tells us it means the newspaper picked up the docket. I think appellant's use of the word in the complaint of republication indicates that it was picked up. It wasn't just published in the newspaper, but, you know, those documents were picked up. They were published in the court, which we know is privileged without question, and then republished. In some way, does that mean published exactly in the newspaper? No. No, I don't believe that does. But I think those statements are privileged, and I don't think he's put enough into his complaint to get over that hurdle of a dismissal on the pleadings. Your Honor, I think this is a case that needs to be affirmed. Judge Caldwell did a very thoughtful, very nice opinion, and I suspect Mr. Hectus will come back and say again that she said that this was a disturbing abuse of power, and I would suggest that most cases where there is a malicious prosecution claim presented, there is an allegation of a disturbing abuse of power. That's just kind of the nature of the beast. And so that doesn't relieve him of the obligation to put into his complaint those facts to sustain his cause of action. And for those reasons, we'd ask that the decision of Judge Caldwell in the district court below be affirmed. Thank you. May I please have the court? Ms. Jacobs is right. I will refer again once to the disturbing abuse of power. That was not an allegation by the plaintiff or the plaintiff's counsel. That was a statement made by Judge Caldwell in her opinion. Now, we are accused of ignoring Kentucky law, and yet the only response that the defendant has to Williams v. Klein is that it was depublished, but that doesn't obviate its authority under Kentucky law. Ms. Jacobs made the interesting comment that Mr. Onus has to prove each and every element of the tort, but we were deprived of the opportunity to prove anything. What is the effect of depublishing in Kentucky? The effect of it is that it doesn't become the law of the land. It was still the law of that particular case, and it can still be cited under Kentucky law. Does it lose precedential value? It may. Do you not know? Well. I mean, you can't give a yes or no? I think the fact that it can be cited as authority despite its depublication would indicate that it has some authority, whether it's precedential value similar to a published opinion. I would say no, it doesn't. All right. Thanks. But nonetheless, this case is also in federal court, and when it is suggested that because this stemmed from a Kentucky prosecution that federal law has no bearing on it, for example, the Town of Newton case or Coughlin v. Coots, I would suggest that at the very least that Coughlin v. Coots establishes a procedural rule for the district courts that in evaluating these type of agreements that the district court is required to do an analysis or to in effect go behind the agreement to determine those aspects that I cited earlier. Was that done in the context of Kentucky law? I don't remember where the Coots case came from. Was it a Kentucky case? Yes, it was an arrest that was effected in Covington, Kentucky, by local police officers, and in that case there was a covenant not to sue. So it was in the context of a diversity case? Yes, and Judge Bertelsman dismissed it without going behind the agreement to determine the things like voluntariness, the public interest, and prosecutorial overreaching. What do we do with this document, Exhibit B, at page 77 of the record, which says, I, John Onimus, approve deducting $22,980 from my $30,000 bond to dismiss this case? Judge, I think that that document is separate apart from the actual criminal proceeding where he was not present because he was the surety on the bond, and so the surety, no matter what the circumstances of the order is, there has to be a release by the surety of the bond, and very often it's for attorney's fees because very often criminal defense attorneys will represent clients in return for a bond assignment, sometimes in whole and sometimes in part. So, in effect, what that did is that allowed the clerk to write two checks, one to Mr. Onimus for the difference. And we're looking to the significance of that. Well, I think the significance of it is what I had suggested. There was an underlying contractual dispute, and this made the entire dispute go away. At this point, there could be no lawsuit, which there should have been in the first instance. This was clearly a civil matter, and I'm not suggesting that. . . That it went away is a benefit to your client and a detriment. Well, I would say that it was a benefit. Well, the detriment I look at is the $22,000. Well, that's true, but on the other hand, there was a dispute about the delivery of the camera and what camera can be delivered. Yeah, that was the entire price, wasn't it? And didn't it portion for the drone, which was retained by the Sheriff's Department? Yes. He was paying much more than the sum that would be represented by the camera alone. No, actually, there's an invoice in the record, and the amount of restitution was the price of the camera. The drone was actually $9,650. $9,650, which include an optional autopilot. So that was in the $9,000. . . Which they retained the drone, by the way. The $9,000 is in addition to the $22,000. . . Yes. . . . in terms of the price. Which was not released or the subject of the dispute, and the Pulaski County Sheriff's Department retained the drone. And the only thing I would say with respect to the defamation claim and the publication, publication is a term of art in defamation law. It simply means making a statement oral or written to a third party. It doesn't necessarily implicate a media defendant who might have a First Amendment privilege. Thank you. Thank you both for your argument. The case will be submitted with the clerk called.